The Board of Commissioners of Allen County *v.* Bacon.

Filed May 29, 1884.

---

No. 10,923.

THE BOARD OF COMMISSIONERS OF ALLEN COUNTY *v.* BACON.

BRIDGES.— *Complaint.— County Commissioners.— Notice.— Negligence.*—In a complaint against a county for injury resulting from a defective bridge negligently permitted to become so by the rotting of its timber, it is not necessary to aver that the board had notice of the condition of the bridge.

SAME.—*Township.— Repair of Bridges.*—An answer in such case, that the bridge had been built and always maintained by the township and its supervisors, and that they had sufficient means to keep it in repair, is bad on demurrer.

SAME.— *Verdict.—Answers to Interrogatories.*—Findings in answer to interrogatories, that no defect in the bridge was apparent, and, also, that the plaintiff had, on the day before the injury, examined it, are not inconsistent with a general verdict for the plaintiff.

EVIDENCE.—*Harmless Error.*—The admission of unnecessary and immaterial evidence is a harmless error.

SAME.—*Hearsay.*—Conversations between persons not parties to the suit or their agents, and never communicated to either party, are not competent evidence.

HIGHWAY.—*User.*—*Dedication.*—*Instructions.*—*Evidence.*—*Harmless Error.*—
Where, in an action for injury resulting from a defective bridge, the evidence shows without dispute that the bridge was located on a highway which had been used as such for more than twenty years, an instruction that fifteen years' public use makes a highway, though erroneous, is harmless, the verdict being clearly right on the evidence.

From the Superior Court of Allen County.

*T. E. Ellison* and *F. W. Rawles,* for appellant.

*R. S. Robertson* and *J. B. Harper,* for appellee.

BICKNELL, C. C.—The appellee brought this action to recover damages for injuries sustained by the appellant's neglect to repair one of its bridges.

The first error assigned is overruling a demurrer to the complaint for want of facts sufficient. The objection is failure to allege that defendant had notice of the defective condition of the bridge.

Where a municipal corporation is charged with negligence, in permitting its highway or bridge to be dangerous, and the danger is created by the wrongful act of another, the complaint must allege that the corporation had notice of such dangerous condition, or else must state facts from which such notice may be fairly inferred. *City of Lafayette* v. *Blood,* 40 Ind. 62; *Higert* v. *City of Greencastle,* 43 Ind. 574; *City of Ft. Wayne* v. *De Witt,* 47 Ind. 391; *Town of Elkhart* v. *Ritter,* 66 Ind. 136.

But where the dangerous condition of the bridge or highway is not created by the wrongful act of another, but arises from the act of the corporation itself, or from decay or rottenness of the structure, it is sufficient in the complaint to charge generally the negligence of the defendant in the act or omission complained of, and no averment as to notice is necessary. *City of South Bend* v. *Paxon,* 67 Ind. 228; *City of Indianapolis* v. *Scott,* 72 Ind. 196; *Board, etc.,* v. *Brown,* 89 Ind. 48.

The complaint in the case before us avers that the plaintiff was crossing, with a loaded wagon, a wooden bridge of the defendant on a highway, which bridge it was the duty of the

defendant to keep in repair and in safe condition for the passage of such wagons, but that defendant, neglecting its duty, permitted the supports of said bridge, and the stringers on which the planks were laid, to become rotten and dangerous, so that when the plaintiff drove thereon, it fell and let the wagon into the stream below, without any fault of the plaintiff, to his damage $250, by reason of the said rotten and unsafe condition of said bridge and the neglect of the defendant to repair the same.

Under the authorities above cited, there was no error in overruling the demurrer to the complaint. It is not necessary in such a case to aver that a defendant had notice of its own omissions. The defendant was chargeable with knowledge that timber will rot and decay by lapse of time and exposure to the weather, and it was its duty to use ordinary care to detect and guard against such decay: *Board, etc.,* v. *Emmerson,* 95 Ind. 579. The complaint charges a want of such ordinary care.

The defendant answered in two paragraphs:

1st. The general denial.

2d. That the bridge mentioned in the complaint was in Madison township, and was a short bridge built by said township, and has always been kept in repair and controlled by the supervisors and superintendents thereof, and that this defendant never had the custody or management thereof, and never had knowledge of any defect therein, and that it was within the means of said township to keep said bridge in repair.

To the second paragraph of said answer a demurrer was sustained, and error is assigned upon this ruling.

The appellant claims that sections 5064 and 5065, R. S. 1881, which require the superintendent of roads in each township to take charge of all bridges in his township, and repair them as far as the prudent use of the means in his hands will permit, relieves the county of some of its obligations, and

that the only bridges which the county is bound to repair are those which it would be beyond the means of the township to repair.

But we think the county is bound to keep its bridges in repair although the means of the township may be sufficient, and although the township officer may fail to do his duty.

The office of superintendent of roads was abolished by section 35 of the act March 2d, 1883, Acts 1883, p. 73; but while sections 5064 and 5065, *supra*, were in force, they did not, and the statutes now in force, which direct in what manner bridges shall be built, and by whom the expense of repairing them shall be borne, do not change the duty of the county board, nor make it any less incumbent on that body to see that the bridges of the county are in good repair.

The act of March 3d, 1855, section 11, which is incorporated in the R. S. of 1881 as section 2892, provides, that " The board of commissioners of such county shall cause all bridges therein to be kept in repair," and this court, in *Board, etc.,* v. *Brown,* 89 Ind. 48, has said : " If it is the duty of county boards to repair, or cause to be repaired, the bridges of the county, such boards are under obligation to the public to exercise a reasonable degree of affirmative and active diligence to ascertain the condition of the public bridges of the county, and see to it that they are kept in repair and reasonably safe and fit for travel." See *Yeager* v. *Tippecanoe Tp.,* 81 Ind. 46 ; *House* v. *Board, etc.,* 60 Ind. 580 (28 Am. R. 657) ; *Pritchett* v. *Board, etc.,* 62 Ind. 210 ; *State, ex rel.,* v. *Board, etc.,* 80 Ind. 478 (41 Am. R. 821) ; *State, ex rel.,* v. *Demaree,* 80 Ind. 519 ; *Board, etc.,* v. *Deprez,* 87 Ind. 509.

The fact that the bridge was short, and might have been, but was not, repaired by the township, is no excuse for the failure of duty on the part of the county board. There was no error in sustaining the demurrer to the second paragraph of the answer.

The issue was tried by a jury, who returned the following verdict, interrogatories and answers:

"We, the jury, find for the plaintiff, and assess his damages at $127."

## INTERROGATORIES.

"1. Was the bridge in controversy in Madison township, Allen county, Indiana? Answer. Yes.

"2. Was not the bridge built with materials furnished by the township trustee, and work done by persons under the direction of the supervisor of the road district of said township, in which the same was situate? Ans. Yes.

"3. Were all the repairs on the bridge or its approaches made by the township or one of its officers? Ans. Yes.

"4. Did the county or the board of commissioners ever make any repairs on the bridge, or in any manner take charge of or assume the control or management of the bridge? Answer. No.

"5. How long was the bridge? Ans. Forty feet.

"6. Was it not a cheap bridge, on a road not used very much, and put by the persons in the neighborhood, and used by them also occasionally? Ans. Yes.

"7. Had not the plaintiff examined the bridge the day before, to see whether it was strong enough to bear the engine damaged? Ans. Yes.

"8. Was there any apparent defect in the bridge? Answer. No.

"9. What notice was ever given to the board of commissioners when in session, or to any member of the board when transacting the business of the board, that the bridge was out of repair? Ans. None.

"10. Was there any evidence to show that Madison township did not have funds out of which the same could have been repaired? Ans. No."

The defendant moved the court for judgment in its favor on the answers to the interrogatories. This motion was overruled, and the defendant's motion for a new trial was overruled. Judgment was rendered upon the verdict and the defendant appealed.

The errors assigned, besides those already considered, are:

3. The court erred in overruling the appellant's motion for judgment notwithstanding the verdict.

4. The court erred in overruling the motion for a new trial.

There was no inconsistency between the general verdict and the answers to interrogatories. There was, therefore, no error in overruling the appellant's motion for judgment notwithstanding the verdict.

The reasons for a new trial were:

1. Permitting the witness, Francis Gladio, to testify to a conversation he had with Isaac Marquardt on the railroad, as to the unsafe condition of the bridge.

2. Refusing to strike out the testimony as to said conversation.

3. Refusing to permit the witness, John Weaver, to testify as to the conversation he had with Enoch J. Miller, in which he told Miller that the bridge was unsafe and rotten, the evening before, and the morning of the day when, the bridge broke and injured the engine.

4. The verdict is not sustained by sufficient evidence.

5. The verdict is contrary to law.

6. The damages are excessive.

7. Error in instructions Nos. 1 and 2 given by the court of its own motion.

The fourth, fifth and sixth of the foregoing reasons for a new trial are not discussed by the appellant's counsel in his brief, and are, therefore, regarded as waived.

The bill of exceptions shows that Francis Gladio was one of the county commissioners of Allen county, and had been such for eight years, and that at a time when he was not engaged in any business for the county, Isaac Marquardt met him on a railroad track and told him the bridge was about played out and not safe to travel, and asked him how they would have to go to work to get a new bridge, and witness replied, if the road superintendent had not the money, he

should get a petition, have it signed by some of his neighbors and present it to the board of commissioners.

Gladio being a witness, the question was put to him by the appellee: "State what Mr. Marquardt said at that time in relation to this bridge?"

To this question the appellant objected because it was incompetent, irrelevant and immaterial, and because statements made to or notice given to the witness at such a time, he not then acting as commissioner, would not bind or be notice to the defendant, but the court overruled the objection and required the witness to answer. And this action of the court and the refusal of the court afterwards to strike out this testimony, are alleged as errors in Nos. 1 and 2 of the reasons for a new trial. If it was not necessary to prove express notice, then the testimony was mere surplusage and immaterial, and the admission of it was a harmless error. If it was necessary to prove express notice, then the testimony was both material and relevant, and it was not incompetent. *City of Lafayette* v. *Larson*, 73 Ind. 367, and cases there cited.

The third reason for a new trial was the exclusion of the testimony of John Weaver, a witness for appellant. It appeared in evidence that the appellee had employed one Weyburn to assist him in hauling the engine, and that the appellee had been threshing for Enoch Miller, and that Miller had agreed with Weyburn to help him haul the engine to its next working place. Weaver said, "I had a talk with my son-in-law Enoch J. Miller the evening before the accident and again that morning before he went to hitch on."

The appellant then put the following question: "State, Mr. Weaver, what you said to Mr. Miller at those conversations about this bridge, as to its being rotten or unsafe?" To this question the appellee objected, because Miller was not then in the employ of the appellee, and because there was nothing to show that either Miller or Weaver had told the plaintiff of the conversation. These objections were

well taken. The testimony was inadmissible and properly excluded.

The first and second instructions, which, in the seventh reason for a new trial, are claimed to have been erroneous, are as follows:

" 1. It is the duty of the board of commissioners of the county to exercise ordinary care and skill in the maintenance in a reasonable condition of repair of all bridges connected with and forming part of the legal public highways of this county.

" 2. A road which has been used as such by the general public uninterruptedly in the same place for a period of fifteen years becomes thereby a public highway."

The first instruction must be taken in connection with the following part of instruction No. 3:

" In order to render the board of commissioners chargeable with the absence of ordinary care in the keeping of the bridge in question in repair, it is necessary that it shall be shown to your satisfaction that such board had notice or knowledge that the bridge needed or was out of repairs. For this purpose notice or knowledge on the part of one of the board while in office would be equivalent to notice to the board itself, but after receiving such notice such reasonable time as might be required to take the necessary steps to have the bridge repaired or travel thereon stopped would be allowed before liability would attach, and the board is chargeable with knowledge of the natural tendency of timber to rot and decay by lapse of time and exposure to the weather." There was no error in these instructions of which the appellant can complain. R. S. 1881, section 2892; *City of Lafayette* v. *Larson, supra; City of Indianapolis* v. *Scott, supra.*

The second instruction was not correct. It is not true, as matter of law, that a road becomes a public highway by uninterrupted user by the public for fifteen years. The statute provides that roads which have been so used for twenty years

The Board of Commissioners of Allen County *v.* Bacon.

shall be deemed public highways, R. S. 1881, section 5035, and a highway may be established by user for a shorter time than twenty years if the circumstances warrant the presumption of a dedication by the owner of the land. This is a question for the jury. Greenleaf says: "The issue is therefore a mixed question of law and fact, to be found by the jury, under the direction of the court, upon consideration of all the circumstances. The length of the time of enjoyment furnishes no rule of law on the subject which the court can pronounce without the aid of a jury, unless, perhaps, where it amounts to twenty years; but it is a fact for the jury to consider, as tending to prove an actual dedication, and an acceptance by the public." 2 Greenl. Ev., section 662. *Hays* v. *State*, 8 Ind. 425; *Summers* v. *State*, 51 Ind. 201. But the error in instruction No. 2 was in this case a harmless one. There was uncontradicted evidence tending to show that the bridge was on a public highway opened and worked by the public and generally travelled, and that the bridge was built by the supervisor the first year the witness lived there, which was fifteen years ago or more, and that the father of the witness got up the petition for the highway, and that he died twenty or twenty-five years ago. The verdict, being clearly right upon the evidence, ought not to be reversed for such an error in the instructions. *Louisville, etc., R. W. Co.* v. *Grubb*, 88 Ind. 85.

PER CURIAM.—It is therefore ordered, on the foregoing opinion, that the judgment of the court below be and the same is hereby in all things affirmed, at the costs of the appellant.

ZOLLARS, J., did not participate in the decision of this case.

Filed May 29, 1884.