The Board of Commissioners of Boone County v. Mutchler.

Filed March 13, 1894.

---

No. 16,457.

## THE BOARD OF COMMISSIONERS OF BOONE COUNTY v. MUTCHLER.

BRIDGE.—*County Bridge.*—*Statute Construed.*—Section 2892, R. S. 1881, which requires the board of county commissioners to keep in repair all bridges in the county, applies to a bridge 40 feet long, 16 feet wide, and 8 feet above the ground, constructed by a county across a ditch, on a free gravel road, a public highway of such county.

SAME.—*Complaint.*—*Negligence.*—*Personal Injury.*—*Approximate Cause.* —Where a complaint alleges that the board of county commissioners negligently failed to place any railing or guards at the sides of the bridge, and left it in such dangerous condition that, while plaintiff was driving over it in a buggy her horse, without fault on her part, became frightened at a hog under the bridge and backed himself and the buggy off at the side, where there was no railing or protection; that the horse, by reason of defendant's unlawful and negligent conduct aforesaid, backed off the bridge, severely injuring plaintiff; and that such injuries were caused wholly by the said

The Board of Commissioners of Boone County v. Mutchler.

negligent conduct of defendant, without fault on plaintiff's part,—the complaint is not objectionable as not alleging that the injury was caused by the defect in the bridge.

SAME.—*Negligence.*—*Notice.*—If the negligence charged is in relation to the original construction of the bridge, it is not necessary to allege notice.

SAME.— *Contributory Negligence.*—The bridge being open to public travel, plaintiff was not negligent in attempting to drive over it and in not choosing another and safer route, though the alleged defect was obvious to her.

SAME.— *Contributory Negligence.*— *Driver.* — *Notice.*— The fact that plaintiff's daughter was driving at the time of the accident does not relieve defendant of liability, unless the accident was due to the daughter's lack of skill, and this lack of skill was known to plaintiff.

DAMAGES.—*Combined Causes.*—*Liability.*—If two causes combine to produce injuries, defendant is not relieved of liability, because it is responsible for only one of such causes.

RECORD.—*Evidence.*—*Reporter's Longhand Manuscript.*—*Bill of Exceptions.*—Where the reporter's longhand manuscript of the evidence is treated as if it were a bill of exceptions, but such manuscript is not embodied in a bill of exceptions, and there is no preliminary statement that what follows is such a bill, nor any certificate by the clerk, the evidence is not in the record.

From the Hamilton Circuit Court.

O. P. Mahan, W. Fertig and H. J. Alexander, for appellant.

T. J. Kane, P. H. Dutch and T. P. Davis, for appellee.

HOWARD, C. J.—This was an action by appellee to collect damages for injuries alleged to have been caused by a defective bridge constructed by appellant upon a free gravel road.

A verdict was returned for appellee in the sum of five thousand dollars; whereupon, a remittitur having been entered for three thousand dollars, judgment was rendered in appellee's favor for two thousand dollars.

The cause was originally appealed to the Appellate Court, where, it appearing that one of the judges had been of counsel in the trial court, and the other judges being equally divided as to the decision proper to be

made on the appeal, the cause was transferred to this court, as required by statute. Acts 1891, p. 39.

It is urged against the sufficiency of the complaint on demurrer, that it is not alleged therein that the bridge was constructed across a watercourse.

A like objection was held insufficient in the case of *Board, etc.*, v. *Legg, Admr.*, 110 Ind. 479. It was contended, in that case, that since the bridge "was a small one, over an artificial ditch, dug for the purpose of draining wet lands," therefore, it was not a bridge over a "watercourse," and the county was not bound to keep it in repair.

The court said: "The county board has general supervision over the bridges of the county, and must exercise reasonable care in keeping all bridges upon the public highways of the county in a safe condition, regardless of the size of the bridge or the character of the streams or ditches which they may span. *Vaught* v. *Board, etc.*, 101 Ind. 123; *Board, etc.*, v. *Bacon*, 96 Ind. 31; *Board, etc.*, v. *Emmerson*, 95 Ind. 579; *Board, etc.*, v. *Brown*, 89 Ind. 48." See, also, *Board, etc.*, v. *Bailey*, 122 Ind. 46, at p. 49.

The accident, in the case at bar, as stated in the complaint, occurred in Boone county, Indiana, while the appellee was traveling in a buggy, drawn by one horse, "upon a certain highway, in said county and State, known as the Lebanon and Elizaville free gravel road, a public highway in said county and State * * *, established, constructed and managed by said county." And it is alleged: "That in said highway, and as a part thereof, the defendant had unlawfully and negligently constructed a bridge across and over what is known as the Heath ditch, and which is known, and has been, as 'Brown's wonder.'"

The dimensions of the bridge are given as "forty feet

long, about sixteen wide, and eight feet above the ditch and ground from one end to the other of said bridge."

We think the bridge so built across "the Heath ditch," is one which the board was required to keep in repair under the provisions of section 2892, R. S. 1881, requiring that: "The board of commissioners of such county shall cause all bridges therein to be kept in repair."

Not only as a bridge over the ditch, but, also, as a bridge which was constructed by the county as a part of a free gravel road, a public highway of said county, was the board required to see that the bridge was safe for public travel.

In *State, ex rel.*, v. *Sullivan*, 74 Ind. 121, in passing on the question as to a bond from a contractor, as required by section 4246, R. S. 1881, it was decided that when the county board takes charge of the construction or improvement of a free gravel road, the same becomes a "county work," in the same sense as the building or repair of a court house, jail, or other public building.

And, in passing on the question of the liability of a township for a part of the expense of maintaining a public bridge connected with a free gravel road, it was said by this court, in the case of *Board, etc.*, v. *Washington Township*, 121 Ind. 379, that while, in certain cases, a township will be required to contribute to the construction or repair of such a bridge, yet the general duty is imposed upon the county, and the means of performing ing the duty are vested exclusively in the county officers. The county, therefore, and not the township, becomes liable for a neglect of this duty. See, also, *Board, etc.*, v. *Emmerson, supra; Board* v. *Bacon, supra.*

So, in *Board, etc.*, v. *Arnett*, 116 Ind. 438, it was held that counties are liable for damages resulting from neglect in keeping bridges on public highways in repair, without regard to the cost of such repairs, and even

though it might be the particular duty of some township or other officer to attend to such matters.

Even if the bridge has not been built, but be adopted and used as a public bridge, the liability attaches.

In *State, ex rel.,* v. *Demaree,* 80 Ind. 519, it was said that: "Where citizens construct part of a bridge or highway, and the public authorities accept and treat it as a part of the public highway, it will be deemed such, and the rights and obligations existing with reference to it will be the same as though the county officers had themselves built it. Shear. & Red. Neg., section 246; Angell Highways, section 38; *State* v. *Town, etc.,* 2 N. H. 513; *Watson* v. *Proprietors, etc.,* 14 Me. 201." See, also, *Vaught* v. *Board, etc., supra.*

In this State, the streets of a city or a town are under the control of their respective municipal authorities, and such municipalities are, therefore, held responsible for the safe condition of the streets, including, also, sidewalks, alleys, and bridges, within the corporate limits. In like manner, the boards of county commissioners are charged with the care of the bridges on public highways, and are held liable in damages for neglect of such duty. *House* v. *Board, etc.,* 60 Ind. 580; *Yeager* v. *Tippecanoe Township,* 81 Ind. 46; *Board, etc.,* v. *Pritchett,* 85 Ind. 68; *Board, etc.,* v. *Deprez, Admr.,* 87 Ind. 509; *Board, etc.,* v. *Montgomery,* 109 Ind. 69; *City, etc.,* v. *Myers,* 119 Ind. 196; *Spicer* v. *Board, etc.,* 126 Ind. 369. See, also, Elliott's Roads and Streets, 41, and notes.

It is next contended that the complaint is insufficient, for the reason that it is not alleged that the injury was caused by the alleged defect in the bridge.

It is alleged in the complaint, "That said defendant, in constructing said bridge, unlawfully, negligently, and carelessly, failed and omitted and neglected to place at the sides thereof any railing, balustrade, or guards; said

bridge being forty feet long, about sixteen feet wide, and eight feet above the ditch and ground, from one end to the other of said bridge; and, after having so unlawfully and negligently constructed said bridge, did unlawfully and negligently permit said bridge to remain in said dangerous condition ever since, and did unlawfully and negligently omit to place on said bridge any railing, guards, or balustrading, or in any way guard the sides of said bridge; that said bridge, constructed as aforesaid, and permitted to remain in such condition, was dangerous for public travel; * * * that while plaintiff was passing over said bridge in a buggy, drawn by one horse, in company with her daughter, when, about two-thirds of the way across said bridge, her said horse became frightened at a hog that was under said bridge, and, without any fault of plaintiff, backed the buggy in which plaintiff was riding off said bridge at the side thereof, at a point where there was no railing or guard, or any protection, to prevent plaintiff's buggy from passing off the side of said bridge, said horse, following said buggy and backing off said bridge at the side thereof, falling upon plaintiff and buggy in which plaintiff was riding; that said horse became frightened without any fault of plaintiff * * * and, by reason of the negligent and unlawful conduct aforesaid of defendant, did back said buggy and self over and off the side of said bridge, at a point where the defendant had unlawfully and negligently omitted to construct railing or guards; that plaintiff was dangerously and severely injured by reason of being backed off said bridge, as aforesaid; * * * that said injuries were caused and produced wholly by the said negligent conduct of the defendant, and that plaintiff did not contribute in any way to cause or produce said injuries, and was without fault on her part.''

The foregoing allegations, as made in the first paragraph of the complaint, are substantially repeated in the second paragraph.

We think they are abundantly sufficient to show that the injury to appellee was caused by the alleged defect in the bridge, to wit, the absence of any railing or guards at the sides of the bridge; and that this defect was due to the careless construction of the bridge by the appellant board of commissioners, and by the failure on the part of the board to place any such guards on the bridge from the time of its construction up to the time of the accident; and that the appellee was herself without fault.

It is contended, by counsel for appellant, that inasmuch as another cause of the accident is alleged, to wit, the frightening of the horse by the hog under the bridge, and as it is charged in the complaint that this hog was under the bridge by the alleged carelessness of the board of commissioners in allowing the landowner at either side of the bridge to connect his fences with the ends of the bridge, and so use the space underneath as a runway for animals; and inasmuch as no such liability for suffering such runway to exist can, in law, be charged against the commissioners, therefore the commissioners are not responsible for the accident.

This contention is on the theory that where there are two causes combining to produce a result from which an injury arises, and the defendant is responsible for only one of the causes, therefore he is not liable for the injury which results. To this conclusion we can not agree.

It is true that counties are not bound to so maintain their bridges that horses will not, under any circumstances, take fright at them. The extent of the county's duty is to so maintain its bridges that they may be safely used by persons lawfully traveling upon the public high-

way.   It might be quite impossible to so build and keep a bridge that something in its form or ·appearance, or something in connection with it, might not frighten horses, without fault of the county or its commissioners. The injury caused by horses becoming frightened in such a case, therefore, is not the proximate result of a breach of duty on the part of the county.   It is only where the construction or maintenance of a bridge is such as is well calculated to frighten roadworthy horses, that the county can be held liable for this cause; and we do not think that in this case any such liability is shown.

Counties are liable, however, for negligence in keeping their bridges in a condition safe for public travel; and a violation of the duty thus imposed becomes a proximate cause of an injury resulting from the unsafe condition of the bridge.

It is quite certain that the injury in this case would not have been caused had there been proper guards upon the bridge.   And if it be conceded that the fright of the horse and the defect in the bridge were concurrent causes of the injury, both present and active in the result; yet, as neither party was to blame for the fright of the horse, and as the appellant was alone to blame for the defect in the bridge, it is quite evident that the appellant can not escape responsibility.   *Board, etc.,* v. *Rickel,* 106 Ind. 501; *Board, etc.,* v. *Sisson,* 2 Ind. App. 311.

As to notice to the appellant, or knowledge on the part of the commissioners, of the condition of the bridge, it is enough to say that as the negligence charged is in relation to the construction of the bridge by the county, and the failure to repair on the part of the board, it is not necessary to allege other notice.   The county is chargeable with knowledge of its own work.   *Board, etc.,* v. *Pearson,* 120 Ind. 426.

It is also intimated that the appellee had equal opportunities with appellant to know the defective condition of the bridge, and might have chosen some other and safer highway. The bridge was allowed, by the appellant, to remain open for travel; there was an implied invitation to enter upon it and cross over. If a bridge is in general use by the public, and a person drives upon it carefully, even though he should know that it is not in all respects in a proper state of repair, but believing that he can cross without danger, the law will not count it contributory negligence in him to do so. He is not bound to anticipate every possible danger. This was a free gravel road, a public highway leading to the county seat, and the appellee was under no obligation to turn out of her way to seek another road, unless, indeed, she had actual knowledge that it was unsafe to continue upon this road. *Board, etc.,* v. *Brown,* 89 Ind. 48; *Town of Gosport* v. *Evans,* 112 Ind. 133; Shear. & Red. Neg., sections 28, 31.

Appellee's daughter was the driver of the horse and buggy at the time of the accident; and appellant argues that if the daughter were negligent in managing the horse and buggy, such negligence would be attributable to appellee.

It is stated in the complaint, "that on said day plaintiff, accompanied by her daughter, was traveling in a buggy, drawn by one horse, under the management and control of her said daughter, who was then a married woman, well skilled in the management and fully capable and able to drive, manage, and control said horse and buggy."

No negligence on the part of the daughter is apparent, and even if there were, it does not appear that such negligence could be attributed to the mother. The daugh-

ter was a married woman, managing and controlling, and fully capable of driving the horse and buggy.

The instruction of the court in regard to this question was, that the failure of the daughter to properly manage the horse on the bridge could be attributed to appellee as negligence only in the event that such failure was due to her lack of skill, and that such lack of skill was known to appellee.

We think this was correct.   The daughter was not her mother's agent, but seems to have been herself in control and quite capable of controlling the horse and buggy. If the daughter were a young girl, and were carelessly entrusted with the reins, the mother might well be charged with negligence in case of accident; but, as it was, the young woman was evidently much more competent for the work than the elderly lady.   It is only where the driver is negligent, and is subject to the control of the passenger, that the negligence of the former will be attributed to the latter.   *Louisville, etc., R. W. Co.* v. *Creek, Admr.*, 130 Ind. 139; *Chicago, etc., R. R. Co.* v. *Spilker*, 134 Ind. 380.

We have carefully examined the other instructions of the court and are satisfied, so far as we can judge in the absence of the evidence, that they are correct statements of the law as applicable to the facts in the case.

The remaining questions discussed by counsel relate chiefly to the evidence.   The evidence, however, is not in the record.

With the transcript is what purports to be the longhand manuscript of the evidence; but it is not embodied in a bill of exceptions.  An effort seems to have been made to have the longhand manuscript itself taken as a bill of exceptions.   This will not do.   To bring the longhand manuscript of the evidence into the record, under provisions of section 1410, R. S. 1881, an ordinary bill of excep-

tions should be prepared, with the usual introduction or certificate by the clerk showing the appointment of a reporter, naming him; that the following oral evidence was delivered, and the rulings of the court in respect to the admission and rejection of evidence, and the objections and exceptions thereto, were made and taken, as noted, and that a verbatim report of such evidence, rulings, objections, and exceptions thereon and thereto was made by said reporter, of which evidence, rulings, objections, and exceptions so made and taken, the following is the original longhand manuscript as the same was made and filed. Then should follow the longhand manuscript, as filed in the clerk's office. At the close of the longhand manuscript should follow the ordinary closing statement of a bill of exceptions, showing that "this was all the evidence given in said cause," and the filing within the time allowed, dated, and signed by the judge; finally, a certificate by the clerk as to the correctness of all the parts of the bill of exceptions, stating, particularly, that the longhand manuscript of the evidence was filed in the clerk's office, and is the same which is embodied in the foregoing bill of exceptions.

When the transcript of the whole record is complete, it should be followed by a distinct certificate by the clerk. The longhand manuscript itself is not a bill of exceptions, but must be embodied in such a bill, and then certified, with the bill, by the clerk. A reporter's certificate can not take the place of the clerk's certificate.

There is no pretence of embodying the longhand manuscript in this case in a bill of exceptions, but it is treated as if itself were the bill; and there is an apparent attempt to substitute the reporter's statements for the clerk's certificates; nor is there any preliminary statement made to indicate that what follows is a bill of exceptions. No

question, therefore, arises under the motion for a new trial. *Wagoner* v. *Wilson*, 108 Ind. 210; *Shirk, Exr.*, v. *Coyle*, 2 Ind. App. 354.

In what we have said under the assignments of error, on the pleadings, we think the merits of this case have been fully considered, and that there is no error in the record.

The judgment is affirmed.

Filed Feb. 20, 1894.